## McMillen v. Rose et al.

1. **Vendor's Lien: BOND TO CONVEY: CANCELLATION OF.** Where a note, given in consideration of a bond for the conveyance of real estate, was transferred to a third party, and the bond was afterward canceled by the parties thereto and the real estate conveyed to others, it was held that as against the latter the transferee of the note was not entitled to a vendor's lien upon the property.

*Appeal from Mahaska Circuit Court.*

THURSDAY, OCTOBER 7.

ACTION in equity to establish and enforce an alleged vendor's lien upon certain real estate. Upon a trial the petition of the plaintiff was dismissed, and there was a decree quieting the title in defendants, in accord with the prayer of a cross-bill. Plaintiff appeals.

*Williams & McMillen*, for appellant.

*F. M. Davenport*, for appellees.

ROTHROCK, J.—In 1871 the defendant Robert Rose was the owner in fee of the undivided three-fourths of two lots

1. VENDOR'S LIEN: bond to convey: cancellation of.

in the city of Oskaloosa. James Rose was the owner of the other undivided one-fourth. On the 21st day of July, 1871, said Robert Rose executed and delivered to one Martenstein a title bond, or agreement to convey an undivided half of said lots for a consideration of $5,000. The receipt of $2,000 of the purchase money was acknowledged in the bond, and the balance, being $3,000, was to be paid in two years. The title bond was recorded in the record of deeds of Mahaska county.

On the 26th of February, 1874, James Rose conveyed his undivided one-fourth of the property to Robert Rose, for an expressed consideration of $3,000. When Robert Rose executed his title bond to Martenstein no note or other evidence

of indebtedness was taken for the deferred payment of $3,-000. A note for the amount was executed by Martenstein on the 25th of February, 1874, payable to James Rose, or order, and this note was given by Robert Rose to James Rose as the consideration for the conveyance of the undivided one-fourth of the property. It will thus be seen that Robert Rose was on the 26th of February, 1874, invested with the title of all of said real estate, and that he was under an agreement to convey an undivided half thereof to Martenstein according to the terms of his title bond.

On the 11th day of March, 1874, in pursuance of a previous arrangement, Martenstein entered upon the margin of the record of the title bond the following release:

" For value received I hereby release the within title bond, the obligation having been complied with.

" MARCH 11, 1874.

(Signed)    "A. W. MARTENSTEIN."

On the same day Robert Rose conveyed the whole of said property by deed, with covenants of general warranty, to the Oskaloosa Agricultural Works. The release of the claim of Martenstein under the title bond was made to the end that the Agricultural works might take a title to the property clear of incumbrances.

In 1876 the National State Bank of Oskaloosa recovered a judgment against the Agricultural Works. Execution was issued on said judgment, and the property was sold to the said bank by the sheriff in satisfaction of said judgment. The bank assigned the certificate of sale to the defendant Blackstone, to whom a sheriff's deed was made.

It is not claimed that the representative of James Rose can enforce a vendor's lien as against the one-fourth interest in the property which he conveyed to Robert Rose. That such lien cannot be established seems to be conceded. Indeed, as we understand the argument of counsel for appellant, he concedes that as the property was conveyed by Robert

McMillen v. Rose.

Rose before there was any assertion of a lien, the lien, if valid, must, under section 1940 of the Code, be reserved in writing. It is contended that the taking of the note of Martenstein in payment for the one-fourth interest operated as an assignment of the title bond, because the $3,000 note was given by Martenstein for the purchase-money due to Robert Rose upon the title bond. This position might have some force if the title had remained in Robert Rose, and the title bond had remained in force. But the bond was released, or rather surrendered, by Martenstein, in pursuance of an arrangement by which title was to be made to the Agricultural Works. James Rose, by taking the note for his interest in the land, acquired no interest in the title bond which would prevent the parties thereto from canceling it and making an unincumbered title to a third person. This they did in the lifetime of James Rose, and the judgment of the bank was a lien not subordinate to any claim of James Rose for purchase-money, but superior to it, and the title founded upon the judgment is clear of any lien. It is claimed that the transaction was fraudulent upon the part of the defendants. We find nothing in the record showing that James Rose was deceived. All that appears is that he conveyed his interest in the property to Robert Rose, and took in payment a note on a third person, which has proved to be worthless. He reserved no lien in writing, and acquired none as against these parties by taking the note. It seems to us a mere statement of the facts demonstrates that upon the plainest principles no vendor's lien exists in favor of the plaintiff.

Whatever claim the plaintiff may have against Robert Rose, if any, may possibly be recovered in an appropriate action, but we are quite well satisfied that there is no right to a vendor's lien against the property in question.

AFFIRMED.

SEEVERS, Justice, took no part in the determination of this case.